# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL NO. 1:22CV38-MR-WCM

| | |
|---|---|
| THE ESTATE OF VIVIAN PROFITT McDONALD, by and through AMANDA EDWARDS, Co-Executor and AMANDA EDWARDS, INDIVIDUALLY, as Beneficiary, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NEW DAY FINANCIAL, LLC a Maryland Limited Liability Company; COMMONWEALTH REAL ESTATE INFORMATION SERVICES a/k/a COMMONWEALTH REAL ESTATE INFORMATION SERVICES, LLC, a Pennsylvania Limited Liability Company, solely as Trustee; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), solely as a nominee for New Day Financial, Lender; SECRETARY OF HOUSING AND URBAN DEVELOPMENT; TIMOTHY V. ANDERSON, ESQ. and ANDERSON LAW, solely as Foreclosure Commissioner; and MICHAEL A. KUTYANA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

COMES NOW the United States, on behalf of the named Defendant Federal

Agency, the Secretary of the United States Department of Housing and Urban

Development ("United States" or "Defendant HUD") by and through Dena J. King, United States Attorney for the Western District of North Carolina, and makes this motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and in the alternative, pursuant to Rule 56 for summary judgment.

This case involves Plaintiffs' attempt to avoid the unfortunate consequences of nonpayment of a HUD-insured reverse mortgage debt. Plaintiffs filed this action against the United States and other defendants to challenge a valid federal nonjudicial foreclosure on a property subject to a reverse mortgage that the deceased, Vivian Profitt McDonald ("the deceased"), obtained during her life. After insuring the reverse mortgage, Defendant HUD later became the holder of the mortgage via assignment from the nominee of the original lender. When the deceased passed away, the balance of the reverse mortgage became due, the debt was not satisfied, and the property was foreclosed under the Single Family Mortgage Foreclosure Act ("SFMFA") of 1994, 12 U.S.C. § 3751 *et seq*.

Plaintiffs' Complaint alleges claims against the United States for declaratory judgment, quiet title, wrongful foreclosure, and preliminary and permanent injunction. Plaintiffs fail to allege or articulate any waiver of sovereign immunity that would establish subject matter jurisdiction over the federal defendant, and the

2

Complaint should be dismissed.    In the alternative, Plaintiffs cannot prevail on their claims, and the United States is entitled to summary judgment.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiffs filed a Complaint and Summonses in the Superior Court for Buncombe County, North Carolina on February 9, 2022.    D.E 1.    On February 17, 2022, the United States removed the action to this court.    Only Defendant Kutyana has filed a responsive pleading to Plaintiffs' Complaint.    D.E. 3.[1]

### **B.    Legal Framework**

The National Housing Act ("the Act"), 12 U.S.C. § 1701, *et. seq.*, specifically, 12 U.S.C. § 1715z-20, as amended, established a federal mortgage insurance program to insure home equity conversion mortgages.    A home equity mortgage permits the conversion of a portion of accumulated home equity into liquid assets. 12 U.S.C. § 1715z-20(a).    Congress authorized this statutory framework to meet the needs of elderly homeowners, such as increasing costs of health, housing, and subsistence.    *Id.*

---

[1] Since the United States Attorney's Office represents only the United States/Defendant HUD, it is unclear if the other defendants have been properly served.    None of the other defendants, aside from Defendant Kutyana, have responded to the Complaint.

Under the program, senior homeowners can obtain a Federal Housing Administration ("FHA") insured reverse mortgage, also known as a Home Equity Conversion Mortgage ("HECM") from an approved mortgagee. *Id.* Loan proceeds are paid out according to a payment plan that the mortgagor selects. *See* 24 C.F.R. §§ 206.1—206.308 (HECM program regulations). HECMs do not require repayment as long as the home is the borrower's, or an eligible non-borrowing spouse's, principal residence. As with any mortgage, homeowners are generally required to maintain the property and to pay property taxes and insurance. *Id.* The HECM becomes due and payable in full upon the death of the borrower (and spouse), although the HECM program allows at least six months during this time for arrangements to be made to repay the mortgage. *Id.*

Under the implementing regulations, the original lender may assign an FHA-insured HECM to Defendant HUD under certain circumstances, including "if the outstanding loan balance is equal or greater than 98 percent of the maximum claim amount . . ." and other conditions are met. *See* 24 C.F.R. § 206.107(a). When the mortgage becomes due and payable, the mortgagee (or if the loan has been assigned to Defendant HUD, then Defendant HUD) will issue a Repayment Notice to the mortgagor's estate stating that the mortgage is due and payable. *See* 24 C.F.R. § 206.125. The estate or heirs of the borrower can repay the mortgage, sell the

property for not less than 95% of appraised value, or convey the property to the mortgagee (or Defendant HUD) with a deed in lieu of foreclosure, or obtain their own loan to pay off the reverse mortgage. If the heirs or the estate do not act, the mortgage will be foreclosed by the mortgagee (or Defendant HUD). *Id.*

The SFMFA was enacted to provide for a uniform federal, nonjudicial foreclosure process for single family mortgages held by Defendant HUD. 12 U.S.C. § 3751(b). The agency needed a uniform process because "disparate" state foreclosure laws burdened programs, increased costs, adversely affected communities, and otherwise impaired the ability of the agency to protect the federal financial interest and attain program objectives. *See id.* at §§ 3751(a) and (b).

Under the SFMFA, Defendant HUD, by delegation, designates a foreclosure commissioner to foreclose upon a mortgage. 12 U.S.C. § 3754. The foreclosure commissioner commences foreclosure under the procedures set forth in the statute and regulations. *Id.* at § 3756. These include serving the notice of default and foreclosure upon the current owner, mortgagor, other lienholders, and dwelling units on the property, and publishing the notice in a local newspaper for three consecutive weeks. *Id.* at §§ 3757, 3758. The SFMFA bars claims from any individual that was served with notice of foreclosure. *Id.* at § 3765.

5

## C.    Factual Background

### 1.    *The Reverse Mortgage*

The deceased was a senior homeowner who benefited from the HECM program.    The deceased executed a "Fixed Rate Deed of Trust (Home Equity Conversion)," FHA Case Number 387-1381217-951/255 130568, to secure repayment for advances made under a HEMC loan agreement, up to a maximum principal amount of $288,000.00.    Compl. Ex. A.    The lender was Defendant New Day Financial, LLC ("Defendant New Day").    The beneficiary under the deed of trust was Defendant Mortgage Electronic Registration System, Inc. ("Defendant MERS"), "solely as nominee for Lender and Lender's successors and assigns."    *Id.* The agreement to repay was evidenced by a promissory note that the deceased executed the same day, encumbering the property commonly known as 241 Pole Creasman Road, Asheville, North Carolina 28806 ("the property").    *Id.*; Ex. 1, Declaration of Kasey Watson at ¶ 5.    The deceased also executed a second deed of trust, and the beneficiary is Defendant HUD.    Compl. Ex. D; Ex. 1, Watson Decl. at ¶ 6.    The second deed of trust in favor of Defendant HUD is required for HUD-insured reverse mortgages.    Ex. 1, Watson Decl. at ¶ 6.

According to the Complaint, on or about August 2, 2012, a company called Urban Financial Group, LLC ("Urban Financial"), sent the deceased a letter and

6

indicated that it was the new lender, by virtue of the "MERS registry-internal transfer from loan seller to Urban Financial Group, Inc. with no recordation." Compl., Ex. B. The letter identified "Celink" as the new loan servicer. *Id.*

The deceased passed away on September 19, 2019. Compl. ¶ 19. At some point, it appears that Plaintiff Amanda Edwards ("Plaintiff Edwards"), who is the deceased's daughter and one of the executors of the deceased's Estate, began to occupy the property. Ex. 1, Watson Decl. at ¶¶ 10-12. Plaintiff Edwards alleges that she notified the loan servicer that the deceased had died. Compl. ¶ 19.

### 2. *Assignment to Defendant HUD*

Prior to January 2017, Celink requested approval to assign the reverse mortgage to HUD. Ex. 1, Watson Decl. at ¶¶ 7-8. On or about January 17, 2017, Defendant MERS, "as nominee for New Day Financial, LLC, ISAOA . . ." assigned the reverse mortgage "with all interest, all liens, and any rights due or to become due thereon" to Defendant HUD. Compl. Ex. A; Ex. 1, Watson Decl. at ¶ 8, Ex. B. The assignment was recorded in the Buncombe County Register of Deeds, Book 5511, page 1300. *Id.*

### 3. *Default and Foreclosure*

After the deceased died, in or about September 2019, HUD's contractor and loan servicer, NOVAD, sent Plaintiff Edwards correspondence regarding the reverse

7

mortgage, which, per the applicable HUD regulations, became due and payable in full upon the death of the deceased. Ex. 1, Watson Decl. at ¶ 9. The letter outlined various options for payoff or satisfaction of the mortgage. *Id.*

On or about March 9, 2020, NOVAD sent a letter entitled "Notice of Intent to Foreclose and Accelerate Mortgage Balance," to the address of the property and addressed to the estate of the deceased. Ex. 1, Watson Decl. at ¶ 10. The letter set out the amount of the debt, the fact that the reverse mortgage was in default, and contact information. *Id.* The letter was delivered to Plaintiff Edwards, as evidenced by the certified mail green card that she signed upon receipt. *Id.*

Records indicate that at some point, Defendant HUD received an undated, handwritten letter from Plaintiff Edwards that indicated she wanted to remain in the property and asking for the recipient to let her know what she needed to do. Ex. 1, Watson Decl. at ¶ 12. HUD records also indicate that in March 2020, a representative from HUD's contractor, NOVAD, spoke to Plaintiff Edwards and sent her information regarding options for pay off. *Id.* at ¶¶ 11-12. No pay off was made. *Id.* at ¶ 12.

Defendant HUD designated the mortgage for foreclosure, and designated Defendant Timothy Anderson and Anderson Law ("the foreclosure commissioner or Anderson Defendants") as foreclosure commissioner. On December 1, 2021, the

foreclosure commissioner sent via certified mail, return receipts requested, a Notice of Default and Foreclosure Sale, which had been filed in Buncombe County Superior Court to various recipients at the property address, including: the "Current resident of dwelling" at the property; the deceased or her estate; and Plaintiff Edwards. Ex. 1, Watson Decl. at ¶¶ 13-14, Ex. H; Ex. 2, Affidavit of Rebecca Lynn Meyers. The return receipts ("green cards") confirm that Plaintiff Edwards received the notice of default and signed for each of those persons. Ex. 2, Meyers Aff. (and exhibits). The notice of default was also published in the Asheville Citizen Times on 12/12/21, 12/19/21, and 12/26/21. Ex. 3, Citizen Times Affidavit of Publication.

On January 3, 2022, the foreclosure commissioner conducted a foreclosure sale on the Buncombe County courthouse steps. Compl., Ex E at 2. Defendant Kutyana made the winning bid, and the property was sold to him. *Id.* The deed was recorded in the Buncombe County register of deeds. *Id.*

<u>ANALYSIS</u>

**A. Legal Standard**

*1. Rule 12(b)(1)*

Federal district courts are courts of limited jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only that power authorized by Constitution and statute." *Randall v. United States*, 95 F.3d

9

339, 344 (4th Cir. 1996)(internal citations omitted). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." *Vuyyuru*, 555 F.3d at 347 (internal citations omitted). The existence of federal subject matter jurisdiction is a threshold issue, *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir.1999), and a challenge to the court's subject matter jurisdiction is properly considered on a motion under Fed. R. Civ. P. 12(b)(1). *Clinton v. Brown*, No. 3:15-cv-0048-FDW-DSC, 2015 WL 4941799 at *2 (W.D.N.C. Aug. 19, 2015). The burden of establishing federal subject matter jurisdiction rests on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).

In determining whether a factual basis for subject matter jurisdiction exists for purposes of deciding a Rule 12(b)(1) motion to dismiss, the court is to regard pleadings' allegations as "mere evidence on the issue," and may consider evidence outside the pleadings without converting the motion to one for summary judgment. *RF&P RR. Co.*, 945 F.2d at 768; F.R.C.P. 12(d).

10

*2.     Rule 56*

A court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)), *cert. denied*, 541 U.S. 1042 (2004). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. Unless the court orders otherwise, a party may file a motion for summary judgment "at any time" until thirty (30) days after the close of discovery. Fed. R. Civ. 56(b).

**B.     Plaintiffs' Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction**

1.     *There is No Waiver of Sovereign Immunity*

a.     Plaintiff has not affirmatively plead any waiver of sovereign immunity to establish jurisdiction over the United States in this action.

11

Absent a waiver, sovereign immunity shields the United States and its agencies from suit. *FDIC v. Meyer,* 510 U.S. 471, 475 (1994). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192 (1996). Courts construe ambiguities "strictly in favor of the sovereign." *Library of Congress v. Shaw,* 478 U.S. 310, 318 (1986). Because sovereign immunity is "jurisdictional in nature," *Meyer,* 510 U.S. at 475, if a court finds that a party is entitled to sovereign immunity, the court must dismiss the action for lack of subject matter jurisdiction. *Cunningham v. Gen. Dynamics Info. Tech.,* 888 F.3d 640, 649 (4th Cir. 2018).

Plaintiffs have not affirmatively plead any statutory waiver of sovereign immunity in support of this Court's subject matter jurisdiction. Without an express waiver, Plaintiffs' claims are barred against the United States.

      b.    28 U.S.C. § 2410 does not operate in this case as a waiver of sovereign immunity.

Section 2410 of Title 28 of the United States Code does not provide a waiver of sovereign immunity. Section 2410 is a limited waiver of sovereign immunity when the United States holds a lien or mortgage on certain property, to "quiet title to . . ." or " . . . foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. §

2410(a).   *Bay Sav. Bank FSB v. Internal Revenue Service et. al.,* 837 F. Supp. 150, 153 (E.D. Va. Aug. 24, 1993) (quoting *Pollack v. United States,* 819 F.2d 144, 145 (6th Cir. 1987)).   Section 2410 does not apply in this case because the United States no longer holds any mortgage or lien interest in the property.

In *Bay Sav. Bank,* the district court adopted the reasoning of the Ninth Circuit in determining that a plaintiff could not contest the procedural validity of an IRS tax lien when the government "sold the property prior to the filing of the suit, and no longer claims any interest in the property."   *See Bay Sav. Bank,* 837 F. Supp. at 153-54 (quoting *Hughes v. United States,* 953 F.2d 531, 538 (9th Cir. 1992)).[2] Here, the United States no longer claims an interest in (via mortgage, lien, or otherwise), in the property.   Ex. 1, Watson Decl. at ¶ 16; Compl. ¶ 24, Ex. E. Accordingly, 28 U.S.C. § 2410 does not waive sovereign immunity to establish subject matter jurisdiction.

       c.    The Federal Tort Claims Act does not waive sovereign immunity.

---

[2] In *Bay Sav. Bank*, the Eastern District of Virginia acknowledged the circuit split on this issue and indicated its decision to follow the Ninth and Second Circuits, instead of the Seventh, Eighth, and Third Circuits.   837 F. Supp. at 153-54.   The undersigned has not located a published, Fourth Circuit decision on point, but has found district courts within the Fourth Circuit that have followed the Ninth Circuit's reasoning.   *See Bay Sav. Bank.*, 837 F. Supp. at 153-54; *Felkel v. United States,* 861 F. Supp. 507, 510 (D.S.C. May 5, 1994).

In addition, to the extent that Plaintiffs' allegations sound in tort, they are barred by failure to allege the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.,* as a source of jurisdiction and waiver of sovereign immunity, failure to name the proper party, and by failure to exhaust administrative remedies.

Plaintiffs claim that Defendant HUD had no authority to foreclose, the foreclosure was wrongful, and Plaintiffs are entitled to monetary damages in addition to declaratory and injunctive relief. *Id.* at ¶¶ 17, 22, 28, 30, 33, 37. Construing these claims liberally, Plaintiffs allege that the Defendant HUD's conduct in carrying out its programs and duties under federal statutes and regulations was wrongful and/or tortious. However, the FTCA is the *exclusive* remedy for claims against the United States for injury or loss of property caused by the negligent or wrongful acts or omissions of government employees. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States . . . is exclusive . . . ."); *United States v. Smith,* 499 U.S. 160, 166 (1991) ("[T]he FTCA [is] the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability."); *Ross v. Fed. Bureau of Alcohol, Tobacco, and*

14

*Firearms,* 807 F. Supp. 2d 362, 369 (D. Md. Aug. 4, 2011) (same).   Additionally,

federal agencies may not be sued under the FTCA.   *See* 28 U.S.C. § 2679(a).[3]

Plaintiffs have not alleged the FTCA as grounds for jurisdiction in this case,

and likewise have failed to allege that they exhausted administrative remedies, which

are jurisdictional prerequisites to suit under the FTCA.   *See* 28 U.S.C. § 2675(a)

(no claim may be brought against the United States "unless the claimant shall have

first presented the claim to the appropriate Federal agency and his claim shall have

been finally denied by the agency in writing . . . ."); *Ross,* 807 F. Supp. 2d at 370

(citing *Henderson v. United States,* 785 F.2d 121, 123 (4th Cir. 1986)).   Plaintiffs

have not submitted an administrative claim to Defendant HUD.   Ex. 1, Watson

Decl. at ¶ 17.

    2.    *The Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs lack prudential standing to pursue them.*

"The standing doctrine has both constitutional and prudential components."

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).   "Constitutional standing

relates to whether there is an actual case or controversy under Article III of the

Constitution; prudential standing consists of 'several judicially self-imposed limits

---

[3]  For this reason, where Plaintiffs have only named Defendant HUD, to the extent they are asserting claims under the FTCA, a further basis for dismissal is failure to name the proper party, which is the United States.

on the exercise of federal jurisdiction.'" *Bell v. Clarke*, No. CV TDC-15-1621, 2016 WL 1045959, at *2 (D. Md. Mar. 16, 2016) (internal citations omitted). Among the prudential limitations that courts require for standing is the principle that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (citing *Warth v. Seldin,* 422 U.S. 490, 499 (1975)). "[M]ortgagors generally lack standing to attack transfers of their mortgages through assignments . . . to which they are not parties." *Bell,* 2016 WL 1045959 at *2 (citing *Wolf* and finding that mortgagor who was not a party to the assignment of his mortgage had no standing to challenge the assignment).

Here, Plaintiffs have not alleged that the deceased, the deceased's estate, or Plaintiff Edwards were parties to the assignment from Defendant MERS to Defendant HUD, nor have they alleged that they were intended beneficiaries. With no enforceable contract rights related to the assignment, Plaintiffs lack standing to attack the validity of the assignment. *See Wolf,* 512 F. App'x. at 342 (finding that mortgagor lacked prudential standing to challenge assignment of her mortgage); *Morris v. Reverse Mortgage Solutions, Inc.,* No. 5:16-CV-07899, 2017 WL 1351406 at *3-4 (S.D.W. Va. Apr. 10, 2017) (finding heirs had no standing to pursue claims

16

regarding reverse mortgage of their mothers' property).[4]  Since Plaintiffs' claims

are all based on the alleged invalidity of the assignment, the claims should be

dismissed because Plaintiffs lack standing to pursue them.

**C.      The United States is Entitled to Summary Judgment.**

In the alternative, if the Court finds that it has jurisdiction over the United

States for Plaintiffs' claims, the United States is entitled to summary judgment.   All

four of Plaintiffs' claims hinge upon the alleged invalidity of the assignment of the

reverse mortgage from Defendant New Day to Defendant HUD and/or alleged

noncompliance with the SFMFA:

- Count I alleges that Defendant HUD "was not the owner and holder of the alleged debt instruments . . ."   Compl.. ¶¶ 27-28.
- Count II alleges that the "purported[]" assignment of the reverse mortgage creates a cloud on their title. . ."   *Id.* at ¶¶ 30-31.
- Count III alleges "[Defendant HUD] was not the owner or holder of the debt."   *Id.* at ¶ 33.
- Count IV alleges "[Defendant HUD] is not the owner and holder of the alleged debt and has no legal right [sic] foreclose on the subject property under either federal or state law."   *Id.* at ¶ 38.

As set forth below, there is no genuine issue of material fact or law that the

assignment of the reverse mortgage to Defendant HUD was valid, or that the

---

[4] In *Wolf,* the Fourth Circuit applied Virginia state law that to sue on a contract, one must be a party to or beneficiary of the contract.   *Wolf,* 512 F. App'x. at 342. North Carolina law is the same.   *See, e.g., Town of Bellhaven, N.C. v. Pantego Creek, LLC,* 250 N.C. App. 459, 471-72, 793 S.E.2d 711, 719-20 (2016).

requirements for nonjudicial foreclosure under the SFMFA were met, and the United States is entitled to judgment in its favor.

1.    *The Assignment was valid.*

Plaintiffs allege the assignment of the reverse mortgage from Defendant MERS, as nominee of the original lender, to Defendant HUD was invalid because the lender changed from Defendant New Day to a company called Urban Financial in August 2012.   Compl. ¶¶ 18, 22, 23.   Plaintiffs are wrong.

Plaintiffs fundamentally misunderstand the role of Defendant MERS as nominee for the lender and also ignore the language in the original deed of trust that secured the reverse mortgage.    As this Court and other federal district courts around the country have recognized, "MERS is a company which maintains an electronic registry that stores information as to who originates, services and owns mortgage loans."   *See, e.g., Pickens v. JP Morgan Chas Bank, N.A.,* No. 5:14-CV-00166-RLV-DSC, 2016 WL 2759726 at *5 (W.D.N.C. May 12, 2016) (citing *Ward v. Sec. Atlantic Morg. Elec. Registration Sys., Inc.,* 858 F.Supp.2d 561, 567 n.5 (E.D.N.C. 2012)).   In this case as in many others, MERS' nominee status in the Deed of Trust allows the transfer of the mortgage and/or servicing rights among MERS members without the need to publicly record the assignments of the Note.   *Id.*; *see also Porterfield v. JP Morgan Chase Bank, N.A.,* No. 4:13-CV-00128-BO, 2013 WL

18

5755499 at *9-10 (E.D.N.C. Oct. 22, 2013) (affirming role of MERS in case involving transfer of note and servicing rights of loan).[5]

Critically, "[w]hile a MERS member retains servicing rights over the Note, **MERS remains the beneficiary of record on the Deed of Trust, and continues to act as a nominee for the beneficial owner."** *Porterfield,* 2013 WL 5755499 at *4 (emphasis added); *see also Pickens,* 2016 WL 2759726 at *5. "While MERS never actually holds the note, it is authorized to transfer the mortgage on behalf of a noteholder by virtue of its nominee status." *See, e.g., Rosa v. Mort. Elec. Sys., Inc.,* No. 10-12141-PBS, 821 F. Supp. 2d 423, 429 (D. Mass. Sept. 29, 2011). In North Carolina, both federal and state courts have affirmed MERS' existence and processes, including its ability to foreclose and assign mortgages. *See, e.g., Pickens,* 2016 WL 2759726 at *19; *Greene v. Trustee Servs. of Carolina, LLC,* 244 N.C. App. 583, 592-93, 781 S.E.2d 664, 671-72 (2016) (holding that MERS securitization process does not prevent an effective assignment of the note and deed of trust under North Carolina law).

---

[5] "MERS was created to facilitate the mortgage finance industry and to alleviate the 'slow and burdensome recording processes' required for transferring and assigning residential mortgages.'" *See, e.g., Rosa* at 429 (quoting *In re Agard*, 444 B.R. 231, 247 (Bkrptcy. E.D.N.Y. 2011)).

19

Here, as in the *Porterfield, Pickens,* and *Ward* cases, Defendant MERS was clearly named in the original Deed of Trust as nominee and beneficiary on behalf of the lender, Defendant New Day, and "the Lender's **successors and assigns**." Compl., Ex. A at 1 (emphasis added). The deceased expressly agreed to MERS' designation as nominee and beneficiary under the deed of trust. *Id.* Defendant MERS remained the nominee and beneficiary of the original lender and its *successors and assigns*, which include the new lender, Urban Financial. The internal transfer of lender status among MERS members did not change Defendant MERS' ability to act as nominee and beneficiary, and did not affect its ability to validly assign the deed of trust to Defendant HUD.

Plaintiffs have failed to point to any case or argument to show that the above arrangement—to which the deceased agreed—violates state or federal law. *See Pickens*, 2016 WL 2759726 at \*21. As this Court has noted, the process "*actually satisf*[ies] North Carolina law." *Id.* (citing N.C. Gen. Stat. § 47-17.2); *see also Horvath v. Bank of New York, N.A.,* 641 F.3d 617, 623-24 (4th Cir. 2011) (in case involving transfer of a note secured by a deed of trust to which MERS was the beneficiary, applying Virginia law to reject the plaintiff's argument that the securitization process whereby the lender changed affected the enforceability of the note).

By virtue of the assignment, under 12 U.S.C. § 3756(a), Defendant HUD thus became the holder of the reverse mortgage, and there is no genuine dispute of fact that Defendant HUD had the authority to foreclose the reverse mortgage. Where Plaintiffs' claims are premised on the argument that Defendant HUD did not have such authority, each claim fails.

2. *The Foreclosure was valid under the SFMFA.*

Plaintiffs' Complaint also appears to allege that the foreclosure should have been conducted pursuant to state law, and/or that the SFMFA nonjudicial foreclosure process was not followed. Compl. ¶ 13. None of these arguments has any merit.

*First,* to the extent that Plaintiffs suggest that the SFMFA should not apply because the language in the original Deed of Trust did "not provide for foreclosure under federal law procedures that bypass the foreclosure statutes governing under North Carolina law," Compl. ¶ 13, Plaintiffs are wrong.

The SFMFA and its procedures for uniform, federal nonjudicial foreclosures, applies to single family mortgages that are held by Defendant HUD "pursuant to Title I or Title II of the National Housing Act." 12 U.S.C. § 3751(b)(1). Title II of the National Housing Act, 12 U.S.C. § 1707 *et. seq.*, governs federal mortgage insurance, including the insurance of HEMC mortgages for elderly homeowners like the reverse mortgage at issue. *See* 12 U.S.C. § 1715z-20. The reverse mortgage

21

in this case is a HEMC that was held by Defendant HUD pursuant to this statutory scheme. Ex. 1, Watson Decl. at ¶¶ 2-6. The SFMFA further provides that HEMCs may be foreclosed under its provisions. 12 U.S.C. § 3753. Thus, federal law provides for Defendant HUD (through foreclosure commissioners) to utilize the federal, nonjudicial foreclosure process instead of state law foreclosure processes.

In a similar vein, Plaintiffs also suggest the foreclosure is invalid because neither Defendant New Day nor Defendant HUD "ever filed a claim in the Estate nor did it request the sale of the property through an Estate sale or by way of a foreclosure sale through the power of sale contained in the Deed of Trust." Compl. ¶ 20. But there was no reason for the foreclosure to be conducted in any manner other than by the procedures outlined in the SFMFA, regardless of an estate proceeding. Moreover, there is no requirement in the SFMFA that Defendant HUD file any claim with an estate, as such a requirement would frustrate the explicit purpose of the statute, which was enacted to avoid the delays and additional costs of complying with disparate state laws. 12 U.S.C. § 3751.

*Second,* Plaintiffs allege that certain SFMFA requirements were not met— that the Notice of Default and Foreclosure Sale did not comply with federal regulations and Plaintiffs were not given adequate information on how to pay off the

22

debt and who to contact.  Compl. ¶ 22.  The documents that Plaintiff Edwards *received* make clear these allegations are meritless.

Plaintiffs' allegations are belied by the multiple documents that were sent from NOVAD as loan servicer for HUD in September 2019 and March 2020, and eventually from the Foreclosure Commissioner in December 2021.  Ex. 1, Watson Decl. at ¶¶ 9-10, Exs. C-E; Ex. 2, Meyers Aff.  Service of these documents on Plaintiffs is confirmed by green cards for the March 9, 2020, letter from HUD and the notice of default and foreclosure sale.[6]  Ex. 1, Watson Decl. at ¶ 10, Ex. E; Ex. 2, Meyers Aff. (and exhibits).  The Notice of Default and foreclosure sale was also published for three, consecutive weeks in December 2021 in the Asheville Citizen Times, as required by 12 U.S.C. § 3758(3)(A).  Ex. 3, Publication Aff.

3. *The SFMFA bars Plaintiffs' claims because they were served with the Notice of Default and Foreclosure Sale*

Lastly, under the SFMFA, a sale of real property made and conducted under the statutory scheme to a bona fide purchaser, "shall bar all claims upon, or with respect to, the property sold, for . . . [a]ny person to whom the notice of default and foreclosure sale was mailed as provided in this chapter, and the heir, devisee,

---

[6] While the green cards confirm service on Plaintiff Edwards, under the SFMFA, service is also presumed upon mailing.  *See* 12 U.S.C. § 3758(2)(C).

23

executor, administrator, successor, or assignee claiming under any such person."
12 U.S.C. § 3765(1).

Here, the undisputed facts confirm that the Foreclosure Commissioner mailed the Notice of Default and Foreclosure sale to the current resident of the property, the deceased and her estate, and Plaintiff Edwards, among others.   Ex. 2, Meyers Aff. (and exhibits).   Green cards confirm receipt.   *Id.*   Under the SFMFA, Plaintiffs' claims are barred as a matter of law.

## **CONCLUSION**

Based on the foregoing, the United States respectfully requests that the Court dismiss all claims against it with prejudice for lack of subject matter jurisdiction. In the alternative, the Court should grant summary judgment for the United States.

This the 6th day of April, 2022.

DENA J. KING
UNITED STATES ATTORNEY

s/CAROLINE B. MCLEAN
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar No. 41094
Room 233, US Courthouse
100 Otis Street
Asheville, NC 28801
Phone:   828-271-4661
Fax:   828-271-4327
E-Mail: caroline.mclean@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that on the 6th day of April, 2022, the foregoing Memorandum of Law in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, Motion for Summary Judgment, including all exhibits thereto, was electronically filed with the Clerk of the Court using the CM/ECF system and served on the Plaintiff, and the parties listed below either by CM/ECF email notification or by mailing a copy thereof, first class mail, postage prepaid, and properly addressed to:

H. Gregory Johnson
Ferikes & Bleynat, PLLC
*gregjohnson@ferikesbleynat.com*

Clifford C. Marshall, Jr.
Marshall Roth & Gregory
*cmarshall@mrglawfirm.com*

New Day Financial, LLC
By and Through Daniel E. Sykes/Rosen Hoover, PA
Registered Agent
One Charles Center
100 North Charles Street, Suite 1010
Baltimore, MD    21201

Commonwealth Real Estate Information Services
100 Beecham Drive
Pittsburg, PA    15205

Mortgage Electronic Registration Systems, Inc.
GenPac MES Mailroom 1902
East Vorhees St., #C
Danville, IL    61834-4512

Timothy V. Anderson
Anderson Law
2492 North Landing Road, #104
Virginia Beach, VA    23456

Michael A. Kutyana
5 Starnes Cove Place
Asheville, NC    28806


DENA J. KING
UNITED STATES ATTORNEY

s/CAROLINE B. MCLEAN
ASSISTANT UNITED STATES ATTORNEY